**FETZER REFRIGERATOR COMPANY,
Appellant,**

v.

**Martha S. FETZER (now Martha S.
Hartman), Appellee.**

Court of Appeals of Kentucky.

May 31, 1974.

Rehearing Denied Sept. 20, 1974.

S. J. Stallings, F. Anthony Burke, Robert L. Durning, Jr., Louisville, for appellant.

Frank J. Dougherty, Jr., Foster L. Haunz, Louisville, for appellee.

CATINNA, Commissioner.

On October 22, 1970, Fetzer Refrigerator Company and Norris A. Fetzer entered into an executory personal-services contract by which the company agreed to employ Norris at a regular annual salary and he, in return, agreed to be employed by the company and to devote his principal time professionally to the business of the company. The contract further provided that Norris could retire from daily services with the company on the first day of the month nearest his sixty-fifth birthday, but that under certain circumstances he would be permitted to remain in active and full-time employment after this time.

Paragraph 5 of the contract provided as follows:

"The Company agrees that commencing with the date of such retirement, it will pay to Fetzer an amount equal to fifty percent (50%) of his average salary for the five years immediately preceeding (sic) retirement payable in equal monthly installments. The Company agrees that it will continue to make such payments to Fetzer for and during his lifetime; subject, however, to the conditions and limitations hereinafter set forth. In all events, if Fetzer dies while employed by the corporation, his wife shall receive Two Hundred Dollars per week for ten years if she survives or for the remainder of her life if she were to die before one hundred twenty payments have been made to her, in which event such payments shall cease and terminate with her death."

On November 24, 1970, Norris died. Fetzer Refrigerator Company refused to comply with the terms of the contract and pay to the widow the sum of $200 per week, as provided by Paragraph 5. She thereupon filed this action to enforce payment of the sums due her. Fetzer Refrigerator Company defended on the grounds that Norris abandoned and breached the contract by committing suicide approximately one month subsequent to the date of its execution. The company also alleged failure to conform to the other paragraphs of the contract, a failure of consideration, and also fraud on the part of Norris in signing the contract to work for the company for a lifetime and then taking his own life within a month.

Upon a finding that there was no genuine issue as to any material fact, the trial court directed the entry of a summary judgment in favor of Martha.

Fetzer Refrigerator Company upon this appeal claims that the suicide of Norris terminated the contract, including the employer's obligation to pay weekly benefits to Norris' wife.

In examining the contract, it becomes apparent that it was contemplated by all of the parties that Norris would continue in his employment until such time as he should die a normal death. We do not believe that the contract can be so construed as to say that there was any contemplation of its continued enforceability if Norris committed suicide.

In discussing the terms of an insurance policy which did not contain the usual two-year suicide clause, the Supreme Court in Ritter v. Mutual Life Insurance Company, 169 U.S. 139, 18 S.Ct. 300, 42 L.Ed. 693 (1898), stated:

"It is contended that the court erred in saying to the jury, as, in effect, it did, that intentional self-destruction, the assured being of sound mind, is in itself a defence to an action upon a life policy, even if such policy does not in express words declare that it shall be void in the event of self-destruction when the assured is in sound mind. But is it not an implied condition of such a policy that the assured will not purposely, when in sound mind, take his own life, but will leave the event of his death to depend upon some cause other than wilful, deliberate self-destruction? Looking at the nature and object of life insurance, can it be supposed to be within the contemplation of either party to the contract that the company shall be liable upon its promise to pay, where the assured, in sound mind, by destroying his own life, intentionally precipitates the event upon the happening of which such liability was to arise?"

■ We are of the opinion that the rationale of Ritter applies to the type contract before us, in that it could not have been within the contemplation of any of the parties that their obligation would survive the self-destruction of Norris. A normal death, possibly even a murder, or an accidental death is an event which could have been, and in all probability was, within the contemplation of the parties; and should any of these events have occurred, Martha's claim against Fetzer Refrigerator Company would have survived. As suicide is not one of those things which men normally contemplate on the execution of an agreement of this type, then upon the happening of that event there is an absolute and total breach of the contract which relieves the parties involved from further performance of any of its terms.

The question of liability of Fetzer Refrigerator Company, under this contract, then can only be resolved upon a determination of the manner in which Norris met his death. There was filed in the record an affidavit by Fetzer's father which indicates that on November 24, 1970, his son Norris was found lying face down next to his automobile in Carrie Gaulbert Cox Park on River Road, "dead of a self-inflicted gunshot wound in his right temple,"

caused by a .45-caliber pistol which Norris clutched in his right hand, which hand and pistol were underneath his body.

Martha's deposition indicates that there was no inquest or coroner's report which might in any way tend to establish the actual facts of his death, nor were there any witnesses.

 As the cause of death is not shown by this record, it is necessary that these facts be established by the trial court. The pleading by Fetzer Refrigerator Company that Norris committed suicide presented a factual situation to the court which was not resolved, and therefore the summary judgment was erroneous. Hershey v. Agnew, 83 Colo. 89, 262 P. 526 (1927); 29 Am.Jur.2d, Evidence, Section 217, page 268.

The judgment is reversed for further proceedings in conformity with this opinion.

All concur.